UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

_____
EQUAL EMPLOYMENT                              )
OPPORTUNITY COMMISSION,                       )
                                              )
                 Plaintiff,                   )
                                              )
            v.                                )   No. 1:17-cv-02864-TDC
                                              )
                                              )
MVM, INC.,                                    )
                                              )
                 Defendant.                   )
_____)

## CONSENT DECREE

1.      The parties to this Consent Decree ("Decree") are plaintiff U.S. Equal Employment Opportunity Commission ("EEOC"), an agency of the United States government, and defendant MVM, Inc. ("MVM" or "Defendant").

2.      This Action was instituted on September 27, 2017 by EEOC against MVM, alleging that Defendant violated Sections 703(a) and 704(a) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2(a)(1) and (a)(2), by engaging in a pattern or practice of discrimination based on actual or perceived national origin (African) by subjecting the Charging Parties and a class of aggrieved employees to: (1) disparate terms and conditions of employment; (2) a hostile work environment; and (3) discharge or constructive discharge.  The Commission further alleged that since at least October 28, 2013, Defendant has engaged in a pattern or practice of retaliating against the Charging Parties and a class of aggrieved employees who opposed its unlawful treatment of Africans or who otherwise engaged in protected activity, in violation of Title VII, 42 U.S.C. § 2000e-3(a).  The Complaint in this

1

action was subsequently amended on December 11, 2017. MVM has denied the EEOC's allegations, maintaining that it did not engage in any discriminatory or retaliatory conduct.

    3.    The parties desire to resolve this action without the time and expense of continued litigation, and they desire to formulate a plan to be embodied in a Decree which will promote and effectuate the purposes of Title VII. As such, the parties consent to the entry of this Decree as final and binding between EEOC and MVM. This Decree represents a compromise of disputed claims that the Parties recognize would require additional protracted litigation to resolve. It does not constitute an adjudication by this Court on the merits of the allegations of the Complaint and the Amended Complaint or on the defenses thereto. Nothing contained in this Decree shall be construed as an admission by either Party as to the merits of the claims or defenses of the other Party.

    4.    The Parties agree and stipulate that: this Court has jurisdiction over the subject matter of this litigation and over the Parties for the term of the Decree; this Court has the authority to enter and enforce the Decree; venue in this Court is proper; and all administrative prerequisites and/or conditions precedent to the Action have been met.

    5.    MVM agrees and stipulates that EEOC has named all necessary parties in this Action and that MVM has the authority and capacity to provide in full the monetary, injunctive, and other equitable relief required by the Decree.

## DEFINITIONS

    6.    The following definitions shall apply to this Decree:

    (a)    **"Action"** – The civil action filed by EEOC against MVM at Case No. 1:17-cv-02864-TDC before the U.S. District Court for the District of Maryland.

    (b)    **"Applicable Period"** – Applicable Period shall mean the period beginning October 28, 2013 through the date on which the Court gives final approval.

(c) **"Charges"** – The charges of discrimination identified in the Complaint and Amended Complaint, including those charges filed by the Charging Parties.

(d) **"Charging Parties"** – Charging Parties shall mean the individuals who filed charges of discrimination in the underlying action, and for whom EEOC seeks relief: Mermoz Sikamba-Koyangbo, Celedo Kemngang, Christensia Asong, Lasbery Nwabuwa, Frezghi Woldeab, Raymond Buhmbi, Amadou Bah, Shelly Wallace, and Oliver Asaah.

(e) **"Class Member"** – A Class Member is: (1) a foreign-born, Black, current or former MVM employee, of either African or Caribbean descent (hereinafter collectively referred to as "African"); (2) who worked at a Covered Campus during the Applicable Period; (3) who contends he/she was subjected to the treatment described in the Complaint; (4) who previously expressed an interest in participating in EEOC's lawsuit; and (5) who was previously informed by the EEOC that he or she was a Class Member in the Action, for whom the EEOC seeks relief. A Class Member may also be a US-born, current or former MVM employee, who meets the criteria (2)-(5) and who specifically contends that he/she was subjected to unlawful retaliation for opposing alleged unlawful discrimination, as described in the Complaint.

(f) **"Court"** – The U.S. District Court for the District of Maryland.

(g) **"Covered Campus"** – A Covered Campus shall mean National Institutes of Health ("NIH") Main Campus (Bethesda, MD), Bayview Campus (Baltimore, MD), Poolesville (Poolesville, MD), and Fort Detrick (Frederick, MD), and any other NIH campus with which MVM has or had a contract.

(h) **"Effective Date"** – The date on which the Court enters the Decree.

(i) **"Exigent Circumstances"** - Unforeseeable events causing material disruption or alteration of MVM's business or operations, including but not limited to natural disasters,

3

acts of God, pandemics, security breaches, and acts of terrorism. These examples are intended to inform the meaning of the term.

    (j)    **"Parties"** - EEOC and MVM, collectively.

    (k)    **"Party"** – Either EEOC or MVM.

## FINDINGS

7.    Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the Parties, the Court finds the following:

    (a)    The Court has jurisdiction of the subject matter of this Action and of the Parties.

    (b)    The Court shall retain its jurisdiction for the term of the Decree for the purpose of entering all orders, judgments, and/or agreements that may be necessary to implement and enforce the Decree.

8.    The Court has examined this Decree and finds that its terms are adequate, fair, reasonable, equitable, and just.  The rights of the EEOC, MVM, the Charging Parties and Class Members, and the public interest are adequately protected by this Decree.

9.    This Decree conforms to the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights or privileges of any person or party.  The entry of this Decree will further the objectives of Title VII and will be in the best interest of the Parties, the Charging Parties, the Class Members, and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

## SCOPE OF DECREE

10.    This Decree resolves all issues and claims in the Action filed by the EEOC in this Title VII matter, which emanated from the Charges filed by the Charging Parties.  Except as provided in this Decree, this Decree in no way affects the EEOC's right to process any other

pending or future charges that may be filed against Defendant and to commence civil actions on any such charges as the Commission sees fit.

11. The terms of this Decree shall be binding upon the directors, officers, and managers of Defendant. In the event that there is a transfer of ownership of Defendant during the Term of the Decree, Defendant shall provide prior written notice to any potential purchaser of Defendant's business, provided that as part of said transaction its employees will become employed by the purchaser, of the existence and contents of this Consent Decree.

12. This Decree will become effective on the date of approval by the Court and will remain in effect until its expiration date, which will be two years after the Effective Date.

13. This Decree resolves all claims in this Action. EEOC will not use the Charges (or the EEOC's findings) identified in the Complaint or Amended Complaint as the basis for filing any other claim or lawsuit against MVM, nor will EEOC bring any Title VII or other claim arising out of the events which led to this action against MVM seeking equitable or injunctive relief or damages for the Charging Parties or Class Members, or any other individual who worked for MVM at the Covered Campus.

14. Upon entry of the Decree the Court will dismiss the Action with prejudice, subject to the Court's retained jurisdiction to resolve any claims or disputes concerning the Decree and to enter any order, judgment, or agreement concerning implementation, enforcement, or amendment of the Decree.

## **MONETARY RELIEF**

15. Defendant shall pay the total amount of $1,600,000 ("Settlement Funds") for the purpose of resolving all claims that were made against Defendant in this Action.

16. Within 14 calendar days of the Effective Date, the Settlement Administrator, as described in Paragraph 17, shall establish an interest-bearing Qualified Settlement Fund ("QSF")

account to cover the monetary amounts awarded to the Charging Parties and the Class Members, which shall not exceed the amount deposited into the QSF. The Settlement Administrator shall promptly notify the Parties when it has established the QSF and is prepared to receive the qualifying payment from or on behalf of Defendant. Within 45 days of the Effective Date, Defendant shall cause the Settlement Funds to be deposited into the QSF. Within seven (7) calendar days of completing payment into the QSF, Defendant shall notify the EEOC in writing and/or by email, indicating the date that the payment was made. This payment represents all funds paid in settlement of EEOC's claims in this Action.

## **SETTLEMENT ADMINISTRATOR**

17. Defendant and the EEOC mutually agree to appoint JND Legal Administration as the Administrator of the QSF ("Settlement Administrator"), whose services, including any fees and costs, will be paid from interest earned on the Settlement Funds in the QSF. In the event this interest is insufficient to cover those fees and costs, they will be paid by Defendant. If the Settlement Administrator cannot perform its duties in a proficient manner at a reasonable cost, or otherwise must be replaced, the Parties will confer in good faith to select an alternate Settlement Administrator. The Settlement Administrator may also be changed by order of the Court.

18. The Settlement Administrator shall at all times ensure that the QSF is and remains qualifying under and compliant with applicable statutory provisions and regulations, including those at I.R.C. § 468B and Treasury Regulations § 1.468B-1 *et seq.*

19. Distributions from the QSF to Charging Parties and Class Members will be made by the Settlement Administrator solely at the direction of EEOC and communicated to the Settlement Administrator, with a copy to counsel for MVM, subject to the requirements of the Decree. EEOC shall have sole authority to determine each Charging Party's or Class Member's eligibility for, and the amount of, any payment from the QSF.

20. The Settlement Administrator shall, as efficiently and on as reasonable a cost basis as possible:

    (a) Secure a federal employer identification number for the QSF;

    (b) Establish an interest-bearing account with a reputable banking institution to hold all QSF funds;

    (c) Issue and track notices and Releases related to the Charging Parties and Class Members, with prepaid return delivery where applicable;

    (d) Mail notices and forms to Charging Parties and Class Members;

    (e) Transmit notification of monetary awards;

    (f) Issue checks to Charging Parties and Class Members from the Settlement Fund after receipt of the Releases;

    (g) Issue related tax documents; and

    (h) Perform such other administrative tasks as it may deem necessary to facilitate the claims process, which may include:

        (i) Locating potential Class Members;

        (ii) Corresponding with Charging Parties and Class Members;

        (iii) Receiving and processing telephone and written inquiries from Charging Parties and Class Members;

        (iv) Maintaining and making payments from the QSF;

        (v) Creating, tracking, and maintaining data regarding Charging Parties and Class Members and payments made from the QSF;

        (vi) Preparing and filing all appropriate tax filings and reports, including but not limited to, tax returns required to be filed by the QSF and W-2 and 1099 forms for all payments from the QSF; and

(vii) Performing other duties set forth in this Decree and as the EEOC and Defendant reasonably determine are necessary to administer the Decree.

21. The Parties shall cooperate with the Settlement Administrator, as needed, to facilitate fulfillment of the Settlement Administrator's duties.

22. EEOC shall develop and provide instructions to the Settlement Administrator for a payment distribution process consistent with the requirements of the Decree and that provides for, *inter alia*:

(a) Notification to a Charging Party or Class Member of eligibility for a payment using a Notice – to be vetted and approved by the Parties – with approval not to be withheld unreasonably corresponding with the intended nature of the payment; said notice will contain instructions for accepting the award, including a clear statement of a 60-day deadline for accepting;

(b) Solicitation and securing of the required Release and any additional necessary information or tax documents from the Charging Party or Class Member;

(c) Provision of executed Releases to MVM and EEOC;

(d) Payment distribution(s) to Charging Parties and Class Members who have executed a Release;

(e) Outreach to Charging Parties or Class Members whose returned Release, tax forms, or other documents are deficient;

(f) Outreach to or for Charging Parties or Class Members who do not respond to Notifications or cash their payments, or whose Notifications or payments are returned or undeliverable; and

(g) Extinguishment of the QSF on or before the expiration of the Decree.

**Payment of Monetary Awards to Charging Parties and Class Members**

23. The EEOC has determined the Charging Parties' and Class Members' amounts of recovery and will inform the Settlement Administrator of said amounts. In the event a Charging Party or Class Member declines to accept, declines to execute a Release, or is otherwise rendered ineligible for any portion of the recovery amount as determined by the EEOC, such amount will revert into the QSF, and be redistributed in accordance with Paragraph 32.

24. Within 60 days of receipt of notice from the Settlement Administrator that it has established the QSF, EEOC shall transmit to the Settlement Administrator and MVM a computer-readable list containing the full names, last known addresses, and other contact information for the Charging Parties and Class Members eligible for a monetary payment.

25. EEOC shall determine in its sole discretion the amount of the payments (if any) for each Charging Party and Class Member. EEOC's notice of determination of payments to the Settlement Administrator shall specify and distinguish any portion of a payment for a Charging Party or Class Member. Payments made to Class Members shall be designated as compensatory damages. Payments made to Charging Parties may be designated as no more than twenty-five percent (25%) back pay. The Charging Parties' portion of payroll taxes shall be paid from the QSF. Defendant's share of all applicable payroll taxes (e.g., FICA) for the Charging Parties shall be paid for by Defendant. Defendant shall not offset their obligations under FICA or any other applicable payroll tax laws or regulations using the Charging Parties' monetary awards.

26. No Charging Party or Class Member will be issued any payment from the QSF under this Decree unless he/she first signs and returns to the Settlement Administrator a properly executed Release, attached as Exhibit A, corresponding with the nature of his/her intended payment, and any tax documents deemed necessary by the Settlement Administrator. The terms of the Release may not be altered in any manner. The Settlement Administrator shall retain

copies of the executed Releases and provide the originals to MVM promptly, preferably within 30 days of receipt, with copies to EEOC.

27. The Settlement Administrator shall issue checks to the Charging Party and/or Class Member within thirty (30) calendar days of the date of receipt of properly completed and signed documentation – the Release and tax reporting form(s), as determined by the Settlement Administrator – described in the preceding paragraph.

28. Except for those payments and distributions specifically designated as back-pay wages by EEOC, the amounts distributed from the QSF to Charging Parties and Class Members constitute settlement of claims for "compensatory damages" under Title VII and Civil Rights Act of 1991, 42 U.S.C. § 1981a. The Fund Administrator will issue applicable IRS Forms W-2 and 1099 based on the year in which such funds are paid to a Charging Party or Class Member, reflecting payments made from the QSF. Charging Parties and Class Members are solely responsible for all payee taxes associated with the payments representing claims for compensatory damages.

29. For Charging Parties or Class Members whose Notices are returned by the U.S. Postal Service as undeliverable, the Settlement Administrator will perform one (1) address search per individual and re-mail the Notices once to those for whom a potentially new address can be found, and will also notify the EEOC.

30. The Settlement Administrator shall promptly notify the EEOC of any checks that are returned or are not cashed after a period of one-hundred eighty (180) calendar days have elapsed from the date on which the settlement checks were mailed, and the EEOC shall immediately notify Defendant in writing of the same. In the event that any Charging Party's or Class Member's check is undeliverable or uncashed, and Settlement Administrator and the EEOC determine that the Charging Party or Class Member cannot be located (hereinafter

referred to as a "missing Member"), the missing Charging Party or Class Member shall receive no payments under this Decree. In the event that any portion of the QSF has been allocated to a missing Charging Party or Class Member, and therefore cannot be distributed to the missing Charging Party or Class Member, one-hundred fifty (150) calendar days after the checks were originally mailed, in the sole discretion of the EEOC, the balance of the QSF shall be distributed in accordance with paragraph 32.

31.   Monetary payments shall be made on behalf of deceased Charging Parties or Class Members through representatives of their estate or next of kin if the EEOC determines that appropriate documentation (e.g., letters testamentary or the equivalent) has been provided, along with the other documentation required as a condition for payment. Any sums paid to a deceased Charging Party or Class Member shall be made payable to the estate of the deceased Charging Party or Class Member, or if no estate exists, to the decedent's next of kin, assuming all legal requirements are met prior to such payments.

### Reversion

32.   If there are any additional unallocated funds remaining in the QSF after distribution to the Charging Parties and all Class Members, the Settlement Administrator shall extinguish the residual fund balance and distribute the remainder as a donation by Defendant, to one or more public or not-for-profit organizations that are primarily devoted to the education and/or training of African immigrants, including, but not limited to, educational institutions, and/or educational scholarships, and/or internships or job training for African immigrants. The organizations and amounts paid to each will be determined by the EEOC and provided to the Settlement Administrator. In no event shall there be any reversion of any part of the settlement funds to Defendant or to the EEOC.

## **INJUNCTIVE RELIEF**

33.     Defendant is enjoined from subjecting employees to disparate terms and conditions of employment and/or a hostile work environment, and actual and/or constructive discharge, based on their national origin (African).  Such discrimination violates Title VII, which, in part, is set forth below:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his . . .  terms, conditions, or privileges of employment, because of such individual's . . . national origin . . .

42 U.S.C. § 2000e-2(a)(1).

34.     Defendant is enjoined from engaging in any form of retaliation against any person because such person has opposed any practice made unlawful under Title VII, filed a Charge of Discrimination under Title VII, testified or participated in any manner in an investigation, proceeding, or hearing under Title VII, asserted any rights under this Decree, or benefitted from the relief provided by this Decree.  Such retaliation violates Title VII, which, in part, is set forth below:

It shall be an unlawful employment practice for an employer –

to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

35.     **Expungement of Terminations and Disciplinary Records.**  For all Charging Parties and Class Members who are former employees, to the extent that it has not done so already, MVM will remove any reference to termination for cause from the personnel files of the Charging Parties and Class Members who were involuntarily terminated by MVM prior to

12

October 31, 2018. Their termination forms or information will be revised to reflect that their official reason for leaving was a voluntary resignation. No additional information other than dates of employment and the voluntary resignation shall be provided to other employers or entities checking references.

36. **Security Clearance/Background Investigation Letters.** Within thirty (30) calendar days of the Effective Date, Defendant shall draft a letter of mitigation for those Charging Parties or Class Members needing such a letter. The letter shall be printed on MVM official letterhead, signed by Defendant's Vice President of Human Resources, and shall state that the individual separated from Defendant under circumstances which have since have been resolved and that Defendant does not regard him or her as an involuntary termination.

37. **References.** All future reference checks (both written and oral) and letters of reference, if MVM provides them, will provide only the following information: the Charging Party or Class Member's name, dates of employment, job title(s), job duties (if requested), and salary (if requested). Defendant will not state or imply that the information it provides is provided to comply with a settlement of a claim or to comply with this Decree or is provided as a result of litigation. All requests for references shall be handled by Human Resources. Nothing in this paragraph shall prevent any current or former colleague or supervisor who works for MVM or who has worked for MVM from voluntarily providing a reference for a Charging Party or Class Member if a Charging Party or Class Member specifically requests it of that current or former colleague or supervisor and that current or former colleague or supervisor voluntarily agrees to provide it.

**Harassment Policies and Complaint Procedures**

38. Defendant shall keep in place its Equal Employment Opportunity Policy, which includes the items listed in Exhibit B, attached hereto.

39. Defendant shall continue to publish its Equal Employment Opportunity Policy in an employee handbook or other appropriate format, including on its intranet website, if applicable and distribute the policy, in the same manner as other MVM employment policies are distributed, to employees. Defendant shall continue to provide the document containing its Equal Employment Opportunity policy to new employees upon hire.

### Training

40. On an annual basis for the duration of this Decree, Defendant shall continue to provide virtual, online or in-person training on Defendant's Equal Employment Opportunity policy, including harassment prevention and/or compliance training to its managers, all Human Resources personnel and any individual involved in handling employee discrimination complaints or investigations. Defendant shall provide such training to all future employees who are hired or promoted into the same or similar positions

41. All employees who are or will be involved in responding to or investigating complaints of discrimination assigned to any federal government facility where MVM holds a contract for security services shall be provided annual training for the duration of this Decree on accepted professional standards for receiving and investigating complaints of discrimination, including witness interview techniques, evidence-gathering techniques, taking and maintaining investigative notes and records, analyzing collected evidence, and other methods for eliminating and ameliorating violations of anti-discrimination laws.

42. Defendant shall provide such training to all future employees who are hired or promoted into the same or similar positions set forth above.

### Posting

43. Within ten (10) calendar days after the Effective Date, to the extent that it has not already done so, Defendant shall post the posters required to be displayed in the workplace by

Commission Regulations, 29 C.F.R. § 1601.30, in all places where notices to employees customarily are posted.

## INTERNAL CONSENT DECREE MONITOR

44. By the Effective Date, MVM shall appoint MVM's Vice President of Human Resources to oversee MVM's implementation of the terms of this Decree. The Internal Monitor shall possess the knowledge, capability, and resources to monitor and ensure MVM's compliance with the terms of the Decree. The Internal Monitor shall also possess a reasonable base of knowledge regarding Title VII requirements and human resources management. MVM shall assign the Internal Monitor the responsibility of monitoring and ensuring Decree compliance.

45. In the event the Internal Monitor's employment with MVM ends, the Monitor is promoted or transferred into a different position from which he or she can no longer serve as the Internal Monitor, or cannot continue to serve as the Internal Monitor for any other reason, MVM will, within 30 days, appoint another 4444Internal Monitor subject to the approval of EEOC – which will not be unreasonably withheld.

## REPORTING AND MONITORING

46. **Preliminary Reporting**. Within one-hundred eighty days (180) days of the Effective Date, the Internal Monitor identified above shall provide the EEOC with the following:

    (a) Verification that the posters have been posted;

    (b) Verification that all training has been completed.

47. **Periodic Reporting.** For the duration of this Decree, on an annual basis, the Internal Monitor shall prepare a report which will identify all current or former employees assigned to any federal government facility in the Mid-Atlantic region of the United States where MVM holds a contract for uniformed security officer services who complained (internally or

15

externally) of or reported any discrimination in employment on the basis of national origin, race, or retaliation during that year. This report will include, at minimum, each employee's name; home address; home telephone number; date the complaint was made; nature of the individual's complaint; to whom the complaint was made or with whom filed (e.g., Defendant's union(s), the EEOC, or any Fair Employment Practice Agency tasked with accepting discrimination charges); any investigation and/or action taken in response to said complaints. If no individuals complain of or report discrimination in employment on the basis of national origin, race, or retaliation during that year, the Internal Monitor shall inform the EEOC of the same.

48. With the report, the Internal Monitor shall submit all data in electronic form where available, and otherwise in hard copy form. The reporting period will begin on the Effective Date, and will end two years after the Effective Date.

49. The EEOC may monitor compliance during the duration of this Decree by requesting to review training materials and inspection of any federal government facility in the Mid-Atlantic region where MVM holds a contract for uniformed security officer services. Upon ten days' notice by the EEOC, Defendant will make available for inspection and copying any records reasonably requested by the EEOC, so long as the information sought is narrowly-tailored, necessary and consistent with the monitoring of this Decree. Defendant shall comply with a request for additional records within thirty (30) calendar days of the request.

## EXIGENT CIRCUMSTANCES

50. The Parties recognize that MVM's operations may change in response to Exigent Circumstances, including in response to the COVID-19 pandemic. To the extent MVM is unable to comply with all or part of a term(s) of this Decree due to Exigent Circumstances, such non-compliance will not constitute a violation of the Decree. If MVM believes an Exigent

Circumstance exists that renders MVM unable to comply with the Decree, MVM will notify EEOC as soon as practicable under the Dispute Resolution process of this Decree.

## **DISPUTE RESOLUTION**

51. Nothing in the Decree shall be deemed to create any rights on the part of any entity or individual, other than the Parties, to enforce the Decree. All rights concerning enforcement are vested exclusively in EEOC and MVM.

52. In the event that either Party believes the other Party has failed to comply with any provision of this Decree, the Party shall:

(a) Notify the other Party in writing of the alleged non-compliance by email and regular U.S. mail. That Party shall within thirty (30) calendar days of service of the written notice respond to the allegations of non-compliance by email and regular U.S. mail addressed to its designated representative in accordance with the paragraph on representative contacts below; and

(b) Afford that Party at least thirty (30) calendar days after service of the written notice to meet and confer and, as warranted, remedy the alleged non-compliance.

(c) If the alleged offending Party fails to cure the non-compliance, the Party alleging non-compliance may apply to the Court to enforce the provision in the Decree.

53. All materials required by this Decree to be sent to the EEOC shall be emailed and/or addressed to:

> Equal Employment Opportunity Commission
> Baltimore Field Office
> Attention: Maria Salacuse
> George H. Fallon Federal Building
> 31 Hopkins Plaza, Suite 1432
> Baltimore, MD 21201
> Email: Maria.Salacuse@eeoc.gov

54. All materials required by this Decree to be sent to MVM shall be emailed and/or addressed to:

Littler Mendelson, P.C.
Attention: Peter Petesch and Steven Kaplan
815 Connecticut Avenue, N.W., Suite 400
Washington, DC 20006
Email: ppetesch@littler.com; skaplan@littler.com;

copy to: HRSupport@mvminc.com

55. The Commission and Defendant shall bear their own costs and attorneys' fees in connection with this Action, including in any proceeding to effect and enforce the Decree.

56. If one or more provisions of the Decree are rendered unlawful or unenforceable by act of Congress or by decision of the United States Supreme Court, the Parties shall engage in reasonable efforts to amend the Decree in order to preserve or effectuate, in a lawful manner, the purpose or intent of the conflicting provision. In any event, all other provisions of the Decree shall remain in full force and effect.

57. The undersigned counsel of record in the above-captioned action hereby consent, on behalf of their respective clients, to the entry of the foregoing Consent Decree.

| FOR PLAINTIFF: | FOR DEFENDANT: |
|---|---|
| Sharon Fast Gustafson<br>General Counsel | */s/ Peter J. Petesch*_____<br>Peter J. Petesch (Bar No. 12908)<br>(Signed by Maria Salacuse with |
| Gwendolyn Reams<br>Associate General Counsel | permission of Peter J. Petesch)<br>Steven E. Kaplan (Bar No. 16531)<br>Jason M. Branciforte (Bar No. 14340) |
| */s/ Debra M. Lawrence*_____<br>Debra M. Lawrence<br>Regional Attorney<br>(Signed by Maria Salacuse with<br>permission of Debra M. Lawrence) | LITTLER MENDELSON, P.C.<br>815 Connecticut Avenue, NW,<br>Suite 400<br>Washington, DC 20006<br>Phone: (202) 842-3400 |
| */s/ Maria Salacuse*_____<br>Maria Salacuse (Bar No. 15562)<br>Assistant General Counsel<br>EQUAL EMPLOYMENT | jbranciforte@littler.com<br>ppetesch@littler.com<br>skaplan@littler.com<br>Counsel for Defendant MVM, Inc. |

OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. NE
Washington, DC 20507
Phone: (202) 663-4752
maria.salacuse@eeoc.gov

*/s/*_____
David S. Staudt (Bar No. 94299)
Eric S. Thompson (Bar No. 94299)
Heather Nodler (Bar No. 811561)
Trial Attorneys
(Signed by Maria Salacuse with permission)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6693
David.staudt@eeoc.gov
Eric.Thompson@eeoc.gov
Heather.Nodler@eeoc.gov


Counsel for Plaintiff Equal Employment Opportunity Commission


**SO ORDERED.**

Signed and entered this \_\_\_ day of _____, 2020


_____
Theodore D. Chuang
United States District Judge